## DEN *ex dem.* JOUET *against* SPINNING.

The interest of the mortgagee is personal estate, and passes under a conveyance of personal property ; but the assignee claiming under the transfer, by the legislature, of the personal estate of the mortgagee, which had been confiscated for treason, may bring ejectment on the mortgage.

*Query.* In whose name must the action be brought?

This was an action of ejectment for lands in Essex county. A verdict had passed for the defendant, and on a motion for a new trial, by the plaintiff, it appeared :—

That Jouet, in whose name the suit was brought, had loaned a sum of money, for which Spinning and two others had given their bonds for £270, and Spinning himself a mortgage on the premises in controversy, dated in November, 1775. The money secured by the mortgage became payable in June, 1776.

During the revolutionary contest, Jouet, the mortgagee, joined the British armies ; and in January, 1779, final judgment was entered against him on an inquisition of treason, regularly taken under the acts of assembly.

In May and June following, two several payments were made to the commissioner of forfeited estates, on behalf of the said debt, and the whole sum remaining due and unpaid, including interest to the time of trial, was £32 12*s.* 6*d.*

The plaintiff gave in evidence an act of assembly, passed March, 1795, by which the state of New Jersey transferred all the residue of the personal estate of said Jouet, remaining undisposed of, to his daughters. (See the case of *Den ex dem. Jouet* v. *Watkins, ante.*)

The principal question arising in the case was, whether under the act of assembly above mentioned, any interest in the mortgage deed vested in the daughters, upon which this action of ejectment could be maintained, they being the real plaintiffs in the cause? It was argued by *I. H. Williamson* and *A. Ogden,* for the plaintiff; and *M. Williamson,* for defendant.

*For the plaintiff.* Under the act in question, the whole personal estate of C. Jouet, the mortgagee, remaining undisposed of, was transferred to his daughters. The debt due from the defendant is clearly within the terms as well as the spirit of the act, and consequently the right to demand it is vested in them. The mortgaging of real estate, to secure the debt, cannot alter the nature of the property; it is considered merely in the light of a pledge, as a collateral security, (*Powell on mortgage* 106) and the transfer of the debt carries also the security, and the means by which the payment is to be enforced. 2 *Bur.* 978; *Chan. Ca.* 88, 283; *Prec. in Chan.* 11. The giving the debt was the principal end of the statute, and the remedy, or security, goes with it as a necessary consequence. The rule of law is clear, that whenever a power is given by a statute, every thing necessary to the making it effectual is given by implication; for the maxim is *quando lex aliquid concedit, concedere videtur et id quod devenitur ad illud.* 12 *Rep.* 130–1; 2 *Inst.* 306; 6 *Bac. Abr.* 369.

In fact, so far as regards this formal part of the case, the estate never has been divested out of Jouet. All his property was confiscated, in consequence of the treason committed by him, but the state never could have prosecuted for the recovery of this debt, or sued on the mortgage, except in his name. In the third section of the act of April 18, 1778, (*Wilson* 43) this is expressly provided for, and the commissioners of forfeited estates are directed to prosecute and sue for the debts, &c., due to the offender, in the name of such offender.

This debt never having been recovered by the commissioners of forfeited estates, and it being a chose in action, which until reduced into possession by legal prosecution, was never totally divested out of the real owner; the moment the treaty of peace was ratified, his rights were preserved to him, and he became entitled to prosecute this action on his own account, and for his own benefit. No impediments are to be interposed to prevent a recovery by a British subject of his just debts, and this treaty being under the constitution of the United States, the supreme law of the land is obligatory upon this court.

Whether the estate then, was transferred by the act of assembly, or whether, being a chose in action, it never was taken out of the offender, the plaintiff is clearly entitled to recover in this action. There is no pretence for saying, that the debt has been destroyed, or that the state can prosecute for it. The act in question, if it passed the bond or debt, must either have given to the representatives of Jouet, the remedy by which its payment was to be enforced, or it must have had the effect of annulling the mortgage deed, and relieving the defendant from the pledge which had been given.

*For the defendant.* The main question to be considered, involving in itself the entire merits of the case, is, whether the plaintiff is entitled to recover in the present action? If no recovery can legally be had, the verdict is right, and no new trial will be granted.

Jouet, the offender, convicted of high treason for joining the armies of the enemy, whose entire estate has been confiscated on account of his treason, has been considered by the opposite counsel, in the light of a British subject, whose rights are preserved and guaranteed by the treaty of peace. The benefit of that instrument, which was designed to protect the interests of an innocent and suffering class of men, who had been guilty of no moral crime or political offence, but who had, in the warmth of a furious and protracted war, been involved indiscriminately in the same punishment with the crafty traitor and pusillanimous deserter of his country's standard, it is contended, is to extend to protect rights which had been appropriated, and secure property which had been confiscated in consequence of a notorious act of treason. It is sufficient barely to state this proposition to establish its utter weakness. Jouet was an American ; instead of making his election between the two parties when the government was dissolved, he remained here ; he took upon himself the duties of a citizen of the independent state of New Jersey ; became amenable to its laws, and violated his allegiance and his duty by a subsequent act of treason. It would be a manifest perversion of the terms of the treaty, to include him within its provisions.

Under the act of assembly, transferring to the daughters of Jouet, all his personal estate remaining undisposed of, it is conceived no recovery can legally be had. The express language of the act embraces only personal property, and although the interest of the mortgagee is sometimes considered as a personal interest, because intended to secure a debt, yet by bringing an action of ejectment, it is treated as a real right. Before the mortgage becomes forfeited by the non-performance of the condition of the bond, the debt is the principal, the security merely collateral. Upon the forfeiture of the bond, however, at strict law, the estate is absolute, and the permission to redeem at any subsequent time is an instance of extraordinary liberality, allowed to the mortgagor

to prevent him from absolutely losing his property. The mortgage, however, is always considered, strictly speaking, as the owner of the land; he may maintain an ejectment at any time after the execution of the deed, and it seems a solecism in language to call a right to real property a personal interest.

It is conceded that the debt was personal property; that it passed under the act of assembly, and the claim might have been legally enforced by an action of debt on the bond. There will be no defect of justice in supporting the present verdict; the interests of all parties will be preserved, and the present defendant, who is alone called upon in this action, will only be responsible with the other obligors in the bond, who must be joined with him in an action of debt. Instead, therefore, of compelling the present defendant to pay the whole debt, the others will be forced to contribute according to their respective interests.

If this verdict is set aside, and the plaintiff recovers in another action of ejectment, the consequence will be that he will acquire a valuable estate, which, at the time of executing the mortgage in question, was considered as an ample security for the whole amount advanced, in consequence of the non-payment of little more than one-tenth of that sum. This property has since increased greatly in value, and this will become the right of the plaintiff, if he is allowed to recover in an action of ejectment; or the defendant will be compelled to have recourse to a tedious and expensive chancery suit, which must terminate precisely as the action of debt would now do. On the contrary, the remedy of the plaintiff is perfect and adequate, by an action of debt; he can sustain no damage by refusing a new trial, while the defendant may by granting one.

It is not meant to deny that in some instances the interest of the mortgagee is considered as part of his personal estate; it has been so held to prevent injustice, and for the

same reason wherever it will operate hardship, it will be regarded as real property, to which it is far more nearly assimilated.

*In reply.* It has been urged that the debt secured by mortgage is real property ; no ground has been stated as the foundation of this opinion, which is contradicted by the uniform current of authorities. It never passes by a devise of real estate ; the right to receive the money goes to the executor. An ejectment is merely to recover possession of the pledge, which agreeably to the general law of mortgages, continues in the possession, and under the control of the mortgagor, until changed by the judgment of the court. But when the possession is thus altered, the property still continues a pledge, which may be redeemed within a reasonable time, until the party by his own negligence, forfeits his claim and his right to the property.

From the principles contended for, it would follow that the act of assembly transferring the interest of the state to the daughters of Jouet, would operate, so far as regards the present case, chiefly by discharging the land of the debt which it was intended to secure. The debt is acknowledged to have passed ; the state, after assigning the bond, can have no further interest in the security. Either the mortgage deed must be cancelled, a conclusion certainly never contemplated by the legislature, enuring to the benefit of one whose interests never were in their view, or it must go with the debt, as inseparable from it. The law gives the debt, the remedy follows of course.

The act under which the inquisition was had confiscates all the estate of C. Jouet, and the commissioners of forfeited estates are directed to sue in the name of the offender. By the act transferring the personal estate to the real plaintiffs in this suit, they likewise are authorized to prosecute in the name of their father. No objection, therefore, can be raised on that ground, and every difficulty in the way of final recovery is removed.

KINSEY, C. J. This is an ejectment on a mortgage, brought for the recovery of lands in Eesex county. The premises were mortgaged in November, 1775, by the present defendant to the nominal plaintiff, as a security for a debt. Jouet, the plaintiff, having committed an act of treason, final judgment passed against him, on an inquisition under the act of April, 1778, and his entire estate, being confiscated, vested in the state of New Jersey, in January, 1779. Payments were made on account of this debt to the commissioners of forfeited estates, but a balance still remaining due, this ejectment is brought to the use of the daughters of Jouet, to whom the legislature, by an act of March 5, 1795, conveyed all the interest of the state in the personal property of the offender.

The main question arising on these facts, is, ought a recovery to be had in this form of action? if it can, the verdict is erroneous, and ought to be set aside; if not, whatever may have been the grounds of the decision, no new trial should be granted.

It appears to me to be, at this time, the settled doctrine of the law, whatever opinions may have been formerly held, that a mortgage is merely personal estate, and the land a security for the payment of a subsisting debt. The mortgagee can exercise no act of foreclosure; he can neither lease nor commit waste. The mortgagor may, in an action of ejectment, bring the money into court, and tender it to the plaintiffs; and a payment without deed revests in the mortgagor all the estate and interest which he previously had in the premises. Thus the interest is considered as merely a personal one.

Still, however, before payment, an action of ejectment can be sustained, as one means of enforcing the demand. By the act of April, 1778, sec. 3, the commissioners of forfeited estates may prosecute for the debts and demands due to the offender, in the name of such offender. This was in the exercise of a power clearly belonging to the legislature, and

Den *v.* Spinning.

against which it appears to me there can exist neither a legal nor equitable objection. By the act of 1795, the legislature conveys all the interest in the personal estate of C. Jouet, then remaining undisposed of, to the daughters of Jouet, authorizing them to sue for the recovery of the same, either in their own names or in the name of their father.

The money not having been paid on the bond, an ejectment is a remedy to enforce the claim, which the law recognizes as formally correct. This action is properly brought in the name of C. Jouet, and it does not strike me, that any just or technical difficulty exists to prevent a recovery. The verdict was, therefore, against evidence, and must be set aside, and without costs.

BOUDINOT, J. (after stating the circumstances of the case.) The defendant's counsel has objected, that the sum remaining due being so small, the action for its recovery should have been debt on the bond, and not ejectment on the mortgage. The question, however, in an action of ejectment is not, what is the amount of the debt? but has the plaintiff a right to the land? It is perfectly immaterial, whether £10 or £10,000 is due on the mortgage; the right of possession is equally perfect in either case, and of consequence his right to a recovery. The law allows the plaintiff several remedies, he is allowed to elect between them, or to pursue them all at the same time, and I am not aware that this court has any authority to interpose or to control him in the exercise of this power. Neither am I able to comprehend in what manner the evils contemplated by the counsel, can flow from this doctrine. The defendant may tender the amount due, and in that case the plaintiff must proceed at his peril.

If, however, any legal objections exist to a recovery in this case, it is perfectly immaterial upon what grounds the verdict may have passed for the defendant; it would be in vain to grant a new trial, if in the end the result must be

the same. This brings me to consider the main question in the case, *viz.* : Can the present action be maintained in the name of C. Jouet, the mortgagee, as lessor of the plaintiff?

There is no principle in the law better settled, than that the plaintiff in ejectment must shew that his lessor was seized or possessed of such an estate in the premises, as to warrant him in making the lease set forth in the declaration. The lessor of the plaintiff on this record, is C. Jouet, and the question arises, is he, either in law or in equity, vested with such a title to the premises in question, as to enable him to make a lease?

By the first section of the act of December 11, 1778, forfeiting to and vesting in the state of New Jersey, the real estate of certain fugitives and offenders, it is enacted, that all and singular the lands, tenements and hereditaments of such offender; all his estates real, of what nature or kind soever, which he shall have been seized or possessed of, interested in, or entitled to, shall be forfeited to, and vest in, the state of New Jersey for ever. Under this general language, all the estate of the offender, and his right of possession, is divested out of him, and vested in the state; and unless there is some after grant, reconveying his interest in proper and appropriate terms, so as to enable him to maintain an ejectment for the same, the inquisition and judgment must operate as a perpetual bar.

There is no question in my mind, as to the power of the legislature to pass a law authorizing Jouet, or any other person, to whom the estate was given, to sue for the same in an action of ejectment. No such authority has, however, been given, nor can I find that any legislative act was passed, declaring in what manner or in whose names, actions for the recovery of real property should be brought. The third section of the act of April 18, 1778, unquestionably relates exclusively to personal actions, as at that time no real estate had been made forfeitable. The counsel for the plaintiff,

have urged, that a debt secured by mortgage is considered as a specialty debt; that the legislature having given the debt, and the right of suing for it, the grantees are entitled to all the remedies which the state could have employed for reducing this claim into possession. Of this, I entertain no question, the proposition is sound law; and I have accordingly considered the case as between the state and the defendant. If the state would have been entitled to a recovery in the present form of action, in the name of Jouet, I should have no doubt that the real plaintiffs in this case might do the same.

But while I acknowledge that the interest of the mortgagee is a personal interest; that the daughters of Jouet, might have brought an action of debt on the bond, in the name of their father, yet I regard this as an action of a peculiar kind, intended to enforce a personal demand by proceedings of a real nature. The act authorizing personal suits, does not in my opinion extend to actions of ejectment, and thinking that in this form of action no recovery can be had, I am against disturbing the verdict.*

* See *ante,* note to the case of Jouet v. Watkins.